UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERBSLOEH ALUMINUM SOLUTIONS, INC.,

    Plaintiff,

-v-

ANCHOR TOOL & DIE CO., d/b/a ANCHOR MANUFACTURING GROUP

    Defendant.

Case No.

Hon.

Mag.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

---

BUTZEL LONG, P.C.
Max J. Newman (P51483)
Louis F. Ronayne III (P81877)
201 West Big Beaver, Ste 1200
Troy, MI 48084
(248) 258-2907
newman@butzel.com
mersino@butzel.com
ronayne@butzel.com
Attorneys for Plaintiff

---

Plaintiff states as follows:

PARTIES, JURISDICTION, AND VENUE:

1. Plaintiff is a for-profit corporation organized under the laws of Michigan.

2. Defendant is, on information on belief, a for-profit corporation organized under the laws of the State of Ohio, with its principal place of business in Cleveland, Ohio.

3. This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) or (2), because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States or citizens of a State and citizens of a foreign state.

4. This Court has personal jurisdiction over Defendant under Michigan's long-arm statute, M.C.L. § 600.715(1) and (5). Plaintiff's claims arise out of and relate to Defendant's commercial activities in Michigan. Further, pursuant to the contracts between the parties, Defendant consented to the jurisdiction of this Court.

5. Venue is proper in this forum under 28 U.S.C. § 1391(b)(2) because "a substantial part of property that is the subject of the action is situated" in Portage, Michigan, within the Western District of Michigan.

GENERAL ALLEGATIONS

6. Plaintiff develops and produces extruded and surface-finished aluminum profiles for a wide variety of industries.

2

7.     Defendant is a producer of metal stampings and welded, complex assemblies.

Plaintiff Orders Production From Defendant:

8.     On June 30, 2017, the Plaintiff issued Scheduling Agreements to the Defendant that committed Defendant to produce and Plaintiff to Purchase its requirements of several component parts related to running boards (the "Parts") ultimately to be shipped to Plaintiff's customer for use in Mercedes vehicles.

9.     The Scheduling Agreements[1] are summarized as follows:

| Agreement Number | Part | Quantity | Price |
|---|---|---|---|
| 5600001650 | HO218 L I Stamped W166 RB LH Stamped | 280,000 | $4.245 |
| 5600001651 | HO218 RH Stamped W166 RB RH Stamped | 280,000 | $4.245 |
| 5600001652 | HO219 LH Stamped X166 RB LH Stamped | 56,000 | $8.28 |
| 5600001653 | HO219 RH Stamped X166 RB RH Stamped | 56,000 | $8.28 |

---

[1] Collectively attached as Exhibit "A"

3

10. All production under the Scheduling Agreements was to be completed by December 31, 2022. By subsequent modification, the time for completion of production was changed to December 15, 2022.

11. Each of the Scheduling Agreements incorporated EAS' General Terms and Conditions of Purchase. Together, the Scheduling Agreements, EAS' General Terms and Conditions of Purchase and all collateral agreements between the parties are referred to as the "Contracts."

12. As Defendant knew, Defendant was Plaintiff's sole source for the Parts.

13. As the Defendant knew, Plaintiff and its customers used the just-in-time inventory system. Accordingly, as explained in more detail below, the timely delivery of quality parts from Plaintiff to Ford was necessary to prevent an incredibly costly shutdown of multiple assembly plants.

14. EAS' General Terms and Conditions of Purchase provide that, among other things:

   a. Seller maintain production and delivery capacity so that deliveries can be made in accordance with Buyer's Releases. ¶4(b)

   b. Seller must take all available measures to avoid deviation from the Buyer's releases. ¶4(b).

4

    c. Seller shall maintain a 100% on time delivery record and a 100% compliance record with other Order requirements. ¶6.

    d. Seller must comply with all of Buyer's quality requirements. ¶12(a).

    e. Seller warrants and represents that all Goods shall be merchantable, free from failure in the final product, free from defects, fit and functional for use in the final product. ¶13(a)

    f. Seller would be in default of the Contracts if it failed to timely perform and obligation, or if Seller's performance of its obligations were not in conformity with the requirements of an Order. ¶17(a)

15. Defendant did not meet the schedules provided by Plaintiff.

16. Defendant breached the Contracts by failing to timely supply quality Parts in accordance with the Contracts.

17. In order to remedy late shipments, on June 24, 2022, Defendant committed to produce at least 7,200 Parts per week. However, Defendant never met that commitment.

18. Despite commitments to specific volumes, Defendant did not maintain sufficient production capacity to ensure timely delivery in accordance with Plaintiff's release.

19.     Further, Defendant created or suffered long delays in delivery of Parts, often keeping Plaintiff's trucks waiting hours past the times agreed for delivery before loading even began.

20.     Defendant's Parts were subject to multiple defects which were material and did not meet the design or specifications.

21.     Defendant had an excessive and material number of Parts that were timely and seasonably rejected by Plaintiff because they did not meet the Plaintiff's quality requirements.

22.     The defects in the Parts delivered by Defendant were not timely repaired or replaced.

23.     When Parts were delivered, they were non-confirming, or even unsafe.  For example, on or about December 2, 2022, 20 Parts were delivered that had blood on them, a significant health hazard.

24.     As a result, the Plaintiff experienced damages, including, but not limited to, labor down time, cost of inspections, premium freight to ensure supply to customers, quality rejections by Plaintiff's customers and chargebacks.

25.     The total damages experienced by the Plaintiff as a result of the Defendant's breaches of contract exceed $3,000,000.

6

Defendant Has Been Paid In Full:

26. To date, Plaintiff has paid Defendant all open invoices under the Contracts.

27. There is no amount due from Plaintiff to Defendant. Every valid Invoice sent by Defendant to Plaintiff has been paid in full.

COUNT I: BREACH OF CONTRACT

28. Plaintiff incorporates each preceding paragraph of this Complaint as if fully restated.

29. The Contracts (including the General Terms) are valid and binding agreements between the parties.

30. As noted above, Defendant breached the Contracts by failing to timely supply the Parts at the times required by the Contracts.

31. Defendant breached the Contracts by supplying defective, non-conforming and unsafe Parts.

32. Defendant did not and has not cured its breaches of the Contracts.

33. As a direct and proximate result of Defendant's breach of the Agreement, Plaintiff has incurred and will continue to incur substantial damages as outlined above, and already exceeding $3,000,000.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant in an amount to be determined, in excess of $3,000,000, plus interest, costs and attorneys' fees as permitted by law.

## COUNT II – CLAIM AND DELIVERY

34. Plaintiff incorporates each preceding paragraph of this Complaint as if fully restated.

35. As part of the Contracts, Plaintiff agree to supply steel blanks to Defendant for Defendant to stamp.

36. Under the Contracts, the steel blanks remained property of the Plaintiff, and never became property of the Defendant.

37. As a result of the Defendant's failure to do cycle counts as required, Plaintiff does not have an exact figure for how many blanks the Defendant possesses.

38. However, based on the records that are available to Plaintiff, Defendant has retained possession of up to $500,000 of blanks.

39. The blanks are independent property and are divisible and identifiable.

40. Despite demand, the Defendant has refused to return the blanks.

8

WHEREFORE Plaintiff requests that this Honorable Court enter its order awarding Plaintiff possession of the blanks pending final judgment in this matter.

                                          Respectfully submitted,

                                          BUTZEL LONG, P.C.

                                          By: /s/ Max J. Newman
                                          Max J. Newman (P51483)
                                          Louis F. Ronayne III (P81877)
                                          201 West Big Beaver, Ste 1200
                                          Troy, MI 48084
                                          (248) 258-2907
                                          newman@butzel.com
                                          ronayne@butzel.com
Dated: December 30, 2022             Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ERBSLOEH ALUMINUM SOLUTIONS, INC., | Case No. |
| Plaintiff, | Hon. |
| -v- | Mag. |
| ANCHOR TOOL & DIE CO., d/b/a ANCHOR MANUFACTURING GROUP | JURY DEMAND |
| Defendant. | |

BUTZEL LONG, P.C.
Max J. Newman (P51483)
Louis F. Ronayne III (P81877)
201 West Big Beaver, Ste 1200
Troy, MI 48084
(248) 258-2907
newman@butzel.com
mersino@butzel.com
ronayne@butzel.com
Attorneys for Plaintiff

PLAINTIFF'S JURY DEMAND

Plaintiff demands a jury trial with respect to all issues triable of right by a jury.

(signatures to follow)

2

                                                  Respectfully submitted,

                                                  BUTZEL LONG, P.C.

                                                  By: /s/ Max J. Newman
                                                  Max J. Newman (P51483)
                                                  Louis F. Ronayne III (P81877)
                                                  201 West Big Beaver, Ste 1200
                                                  Troy, MI 48084
                                                  (248) 258-2907
                                                  newman@butzel.com
                                                  ronayne@butzel.com
Dated: December 30, 2022                  Attorneys for Plaintiff