# ERBSLOEH ALUMINUM SOLUTIONS, Inc.

## GENERAL TERMS AND CONDITIONS

## OF PURCHASE

## Table of Contents

Page

1. **Scope and Acceptance.** ...................................................................................................... 1
   (a)   Scope ...................................................................................... 1
   (b)   Offer and Seller's Acceptance ............................................. 1
   (c)   Seller's Quotation ................................................................. 1
   (d)   Inconsistent or Additional Terms ....................................... 1
   (e)   Other Provisions ................................................................... 1
2. **Duration of Order** ...................................................................................................... 1
3. **Prices, Payment, Audit, and Security Interest** ......................................................... 2
   (a)   Pricing and Invoices ............................................................ 2
   (b)   Payment ................................................................................. 2
   (c)   Customs Invoice ................................................................... 2
   (d)   Taxes ...................................................................................... 2
   (e)   Payment Conditions ............................................................. 3
4. **Releases and Quantities** ........................................................................................... 3
   (a)   Releases ................................................................................. 3
   (b)   Seller's Obligations Regarding Capacity ........................... 4
   (c)   Time Limitation on Claims .................................................. 4
5. **Electronic Data Interchange** ................................................................................... 4
6. **Delivery** .................................................................................................................... 4
7. **Changes.** ................................................................................................................... 4
   (a)   Required Changes and Requests for Adjustments ............ 4
   (b)   Limitation on Changes ......................................................... 5
8. **Service and Replacement Parts** ............................................................................... 5
9. **Risk of Loss and Title to Goods.** ............................................................................. 5
   (a)   Risk of Loss ........................................................................... 5
   (b)   Title to Goods ....................................................................... 6
   (c)   Right to Possession ............................................................... 6
10. **Maintenance and Safe Use** ..................................................................................... 6
11. **Confidentiality and Intellectual Property.** ............................................................. 6
    (a)   Confidentiality ....................................................................... 6
    (b)   Seller's Non-Confidential Information ............................... 7
    (c)   Indemnification ..................................................................... 7
    (d)   Specific Disclosures Regarding Patents ............................. 8
    (e)   Restrictions on Seller's Sale Activities .............................. 8
    (f)   Exclusive Ownership of Developed IP for Buyer ............. 8
    (g)   **Software Rights** ................................................................. 8
12. **Quality and Inspection** ............................................................................................ 8
    (a)   Compliance ............................................................................ 8
    (b)   Goods Received ..................................................................... 9
13. **Warranties** ............................................................................................................... 9
    (a)   Express Warranties ............................................................... 9
    (b)   Warranty Period .................................................................... 9
    (c)   **Warranty Intent and Purpose** ........................................ 10
    (d)   Notice of Breach ................................................................. 10
    (e)   Buyer's Defense of Third Party Claims ............................ 10
    (f)   Costs of Remedial Action ................................................... 10

i

|       |     |                                                                                       |     |
|-------|-----|---------------------------------------------------------------------------------------|-----|
|       | (g) | Work Environment                                                                      | 11  |
|       | (h) | Cumulation                                                                            | 11  |
|       | (i) | Assignability                                                                         | 11  |
| 14.   |     | **Indemnity, Insurance and Performance on Buyer's Premises.**                          | **11** |
|       | (a) | Indemnity and Liability                                                               | 11  |
|       | (b) | Insurance                                                                             | 12  |
| 15.   |     | **Termination for Other than Default**                                                | **12** |
| 16.   |     | **Security and Solvency.**                                                            | **13** |
|       | (a) | Security Interest                                                                      | 13  |
|       | (b) | Seller's Financial Information                                                         | 13  |
| 17.   |     | **Default and Remedies.**                                                             | **14** |
|       | (a) | General                                                                               | 14  |
|       | (b) | General Remedies                                                                      | 14  |
|       | (c) | Damages                                                                               | 14  |
|       | (d) | Specific Performance                                                                  | 15  |
|       | (e) | Duty to Deliver                                                                       | 15  |
|       | (f) | Transition of Supply                                                                  | 15  |
| 18.   |     | **Property Furnished or Purchased by Buyer or Its Customer for Seller's Use**          | **15** |
|       | (a) | Ownership                                                                             | 15  |
|       | (b) | Maintenance and Taxes                                                                 | 16  |
|       | (c) | Markings                                                                              | 16  |
|       | (d) | Use and Safety                                                                        | 16  |
|       | (e) | Buyer's Warranty Disclaimer                                                           | 16  |
|       | (f) | Express Trust                                                                         | 17  |
|       | (g) | Liquidated Damages                                                                    | 17  |
| 19.   |     | **Required Tooling**                                                                  | **17** |
|       | (a) | Required Tooling Defined                                                              | 17  |
|       | (b) | Maintenance, Repair, Alteration, Use, Replacement, and Insurance                      | 17  |
|       | (c) | Option to Purchase                                                                    | 18  |
|       | (d) | Buyer's Right to Possession and Seller's Duty to Deliver                              | 18  |
|       | (e) | Injunctive Relief                                                                     | 18  |
| 20.   |     | **Compliance with Laws.**                                                            | **19** |
|       | (a) | Environmental Laws                                                                    | 19  |
|       | (b) | Employment Laws                                                                       | 19  |
|       | (c) | Non-Segregated Facilities                                                             | 19  |
|       | (d) | Controlled Substances                                                                 | 19  |
|       | (e) | Composition of Goods                                                                  | 20  |
|       | (f) | Labor Standards                                                                       | 20  |
|       | (g) | Industry Standards and Law                                                            | 20  |
|       | (h) | Export and Economic Sanctions Laws                                                    | 20  |
|       | (i) | Seller's Import Obligations                                                           | 21  |
|       | (j) | Conflict Minerals Reporting                                                           | 21  |
| 21.   |     | **Assignment, Subcontracting and Replacement Orders**                                 | **21** |
| 22.   |     | **Audit and Examination Rights**                                                      | **21** |
| 23.   |     | **Foreign Purchases**                                                                 | **22** |
|       | (a) | Seller as Exporter and Importer                                                       | 22  |
|       | (b) | Customs Forms                                                                         | 22  |
|       | (c) | Other Certificates                                                                    | 22  |
|       | (d) | Duties and Drawback Rights                                                            | 22  |

(e)  Customs and Country of Origin ........................................................ 22

**24.  Force Majeure** ........................................................................... **23**

**25.  Applicable Law, Jurisdiction, Waiver of Liens and Sovereignty.** .................. **23**

(a)  Applicable Law and Jurisdiction .................................................... 23

(b)  Liens ..................................................................................... 24

(c)  Joinder .................................................................................. 24

(d)  Service of Process .................................................................... 24

(e)  Limitations of Actions ............................................................... 24

**26.  Publicity** .................................................................................. **24**

**27.  Ethical Standards** ....................................................................... **24**

**28.  Payments to Third Party Representatives** ........................................... **25**

**29.  Entire Agreement and Modifications** ................................................ **25**

**30.  Waiver** .................................................................................... **25**

**31.  Relationship of Parties** ............................................................... **25**

**32.  Severability** ............................................................................. **25**

## Index of Defined Terms

| **Term** | **Defined in Section** |
|---|---|
| As Is | 18(e) |
| Background IP | 11(f) |
| Blanket Order | 4(a) |
| Buyer | 1(a) |
| Buyer Guides | 1(e) |
| Certificate of Delivery | 23(b) |
| Collateral | 16(a) |
| Confidential Information | 11(a) |
| Conflict Minerals | 20(j) |
| Customer | 3(e) |
| Employee | 27 |
| Favoritism | 27 |
| Furnished Property | 18(a) |
| Gift or Benefit | 27 |
| Goods | 1(a) |
| Indemnitees | 14(a) |
| Intellectual Property | 11(f) |
| Liabilities | 14(a) |
| Net Settlement Basis | 3(b) |
| Order | 1(a) |
| Payment Start Date | 3(b) |
| Releases | 4(a) |
| Remedial Action | 13(b) |
| Required Tooling | 19(a) |
| Security Interest | 16(a) |
| Seller | 1(b) |
| Software | 11(g) |
| Supplier | 27 |
| Terms | 1(a) |
| Transition Support | 17(f) |

**ERBSLOEH ALUMINUM SOLUTIONS, Inc.**
**("Buyer")**

**GENERAL TERMS AND CONDITIONS OF PURCHASE**

1.      **Scope and Acceptance.**

(a)      Scope.     These General Terms and Conditions of Purchase ("Terms")
automatically apply to and are a part of all written and oral purchase orders and amendments thereto
and any request for quotation, Releases (as defined below), purchase agreements, supply agreements or
similar documents issued to Seller by Buyer (collectively referred to as an "Order").   All goods and
services (whether or not ancillary to a sale of goods) such as production and service parts, raw
materials, equipment, tooling, Furnished Property (as defined below), engineering and design,
components, intermediate assemblies, work in process, and end products to be provided under an Order
are included in the term "Goods."

(b)      Offer and Seller's Acceptance.  Each purchase order, together with these Terms,
is an offer by Buyer or its applicable affiliate as identified in the Order as a Buyer to the party to whom
such Order is addressed ("Seller") to enter into the agreement it describes.  It shall be the complete and
exclusive statement of such offer and agreement and it is not an acceptance of Seller's quotation or
other document.  A purchase order may be accepted by returning a copy thereof signed manually or
electronically by Seller within seven days of the date of a purchase order or, at Buyer's election, by
Seller's oral acceptance, Seller's preparation to provide the Goods, or Seller's delivery of the Goods.
A purchase order is an adequate document to satisfy any statute of frauds.

(c)      Seller's Quotation.  An Order does not constitute an acceptance by Buyer of any
quotation or any proposal of Seller.  Reference in an Order to any such quotation or proposal shall not
constitute an addition to or a modification of any of the terms and conditions of an Order.  A specific
item of a quotation or proposal referenced and adopted by an Order may be included in an Order and
does not constitute adoption of any other portion of the quotation or proposal.

(d)      Inconsistent or Additional Terms.   TERMS AND CONDITIONS IN AN
ATTEMPTED ACKNOWLEDGMENT OF AN ORDER OR OTHER DOCUMENT ISSUED BY
SELLER INCONSISTENT WITH OR IN ADDITION TO THE TERMS AND CONDITIONS OF AN
ORDER ARE NOT BINDING UPON BUYER (UNLESS SPECIFICALLY ACCEPTED BY BUYER
IN A WRITING SIGNED BY BUYER), AND BUYER HEREBY OBJECTS THERETO.

(e)      Other Provisions.  An Order also includes other provisions (as amended from
time to time) specifically stated to be applicable to the Buyer's purchase of Goods, which may be found
on the Buyer's general website or Buyer's supplier website or portal at http://www.wkw.de under
Purchasing Downloads and/or which have been or will be provided by Buyer to Seller, including but
not limited to guides for logistics, purchasing, and quality (together, the "Buyer Guides").  In the event
of a conflict between any Buyer Guides and these Terms, the Terms shall govern.  No exception to,
deviation from, or waiver of these Terms shall be valid or binding on Buyer unless specified on the
face of an Order or Order amendment or made in a signed writing by Buyer's purchasing manager or
officer.

2.      **Duration of Order.**  If no specific period or expiration date is stated in an Order it shall
continue for the longer of life of the project or programs for which the Goods are to be used in

1

production or the period in which they are offered for sale by the Buyer, including for service parts, or until otherwise terminated earlier as provided by these Terms or a specific provision in an Order. The expiration date is not extended by an amendment or revision to an Order which does not expressly modify the expiration date. Expiration or termination of an Order shall not affect warranty, non-disclosure, and other obligations which by their nature may continue beyond an obligation to provide the Goods. The inclusion in an Order of prices for periods beyond the term of any firm period of commitment to deliver in an Order obligates Seller to accept a new or renewed Order at such prices, but is not an implied extension or modification of any commitment of Buyer to purchase. If a specific term is stated in an Order, it shall continue for such period and then expire. If the parties continue to perform their obligations despite an expiration, the provisions of the Order shall continue to apply to such performance.

3. **Prices, Payment, Audit, and Security Interest.**

(a) Pricing and Invoices. Seller shall furnish the Goods at the prices specified in an Order. The price specified in an Order shall be complete, and no additional charges of any type, including but not limited to, for current or increased costs of materials, labor, packaging, labeling, custom duties, taxes, storage, insurance, boxing, crating, installation, training or any other reason, shall be added for any reason without Buyer's express written consent. All prices are firm for the duration of the Order. No price increases will be permitted for any reason, including but not limited to, price increases to cover increases in the cost of raw materials, parts, components, fuel, energy, labor, supplies, overhead, tariffs, duties or transportation, or any other reason. All prices are in U.S. dollars and are FCA Seller's shipment point Incoterms 2020 for shipments with a shipment point within the United States and DDP for shipments with a shipment point outside the United States of America.

(b) Payment. Unless otherwise stated on the face of an Orders or other document signed by Buyer, payment terms are 60 days from the Payment Start Date. The "Payment Start Date" shall be determined by Buyer's policies. Notwithstanding the foregoing, if the point of shipment or delivery is outside the United States, the Payment Start Date shall not be earlier than the date of receipt of the Goods at the destination. Buyer shall pay for Goods on a Net Settlement Basis for all of the accounts of Seller arising from an Order and other agreements Seller has with Buyer. "Net Settlement Basis" means that, unless prohibited by law, Buyer may set off and recoup against Buyer's accounts payable to Seller any amounts which Buyer determines in commercial good faith that Seller or any Seller affiliate is liable to Buyer or any affiliate of Buyer, under any Order or other agreements between Seller or any Seller affiliate and Buyer or any Buyer affiliate. Buyer may do so without advance notice to Seller. Payment shall not constitute acceptance of non-conforming Goods and shall not limit or affect any rights or remedies of Buyer.

(c) Customs Invoice. If Goods will cross an international border during delivery, Seller shall provide to Buyer a commercial invoice and other documents and information in the form and content as required by Buyer's Guides and for customs clearance within a reasonable amount of time requested by Buyer to facilitate the timely clearance. The invoice shall be in English, or in the specific language of the destination country, as directed by Buyer.

(d) Taxes. Seller's price includes all payroll, occupational, excise, sales, use, value-added and all other taxes including but not limited to all taxes, fees, duties, tariffs or other charges applicable to the Goods under the applicable Incoterm or other delivery term; provided, however, that any national, state/provincial and local sales, use, excise, recoverable value added, and/or privilege

2

taxes, if applicable, shall be identified on Seller's invoice separately from the remainder of the price. If Seller is obligated by law to charge any tax to Buyer, Seller shall ensure that it is invoiced to Buyer and, once collected, is promptly remitted by Seller to the appropriate government authority, all in accordance with applicable laws so as to allow Buyer (without any registration with the government) to reclaim such excise, value-added and/or similar tax from the appropriate government authority. Seller transfers to Buyer all taxes, fees, and duties which are recoverable or for the benefit of Buyer and shall cooperate with Buyer to enable Buyer to recover such sums, as Buyer instructs. Seller shall pay all taxes related to ownership, possession or storage of the Goods until Buyer takes possession of the Goods at the shipment destination whether or not title has transferred.

(e)     <u>Payment Conditions</u>.  Notwithstanding the particular payment terms applicable to an Order:  (i) if Buyer is to be paid by its customer ("Customer") for Furnished Property, Seller shall not earn a right to payment for such Furnished Property before Buyer is paid by its Customer for such Furnished Property; (ii) Buyer may, at its option, upon notice to Seller, revise its payment terms for Furnished Property or Goods to take into account any change in the payment terms of Buyer's Customer applicable to the Goods under any Order; and (iii) Buyer may demand from Seller sworn statements and waiver of liens before payment.

4.     **<u>Releases and Quantities</u>.**

(a)     <u>Releases</u>.  If an Order is a "blanket order," "requirements contract," or in some other manner indicates Buyer's obligation to purchase is limited to those Goods and quantities in Releases ("Blanket Order"), the quantities and delivery dates in an Order are not binding on Buyer, and Buyer's obligation to purchase the Goods is expressly contingent upon the issuance of a release or other written delivery instructions ("Release") by Buyer identifying the Goods and materials and quantities to be purchased and providing delivery schedules and directions.  A Release shall be part of the applicable Order.  All Orders for Goods used in production by Buyer or its Customer, or in and for their corresponding service and replacement parts, are Blanket Orders for 100% of Buyer's requirements, unless otherwise provided in an Order.  As to a Blanket Order, Seller shall not provide any services, fabricate or assemble any Goods, procure required materials, or ship any Goods, except to the extent specifically authorized by an Order or by written Releases.  Seller shall maintain at its expense and risk components, materials and finished Goods necessary to assure a continued supply of Goods at the latest design level.  Subject to specific contrary provisions in Buyer's Releases, Seller is authorized to fabricate and assemble only up to two weeks of finished Goods inventory and acquire up to an additional four weeks of component and materials inventory based on Buyer's latest Releases. Buyer shall be obligated only to purchase Goods and those components and materials fabricated or acquired by Seller in reliance on the firm periods provided above or otherwise in a Release.  Seller accepts the risk associated with the lead times of the various materials and components of the Goods if they are purchased beyond the firm Release quantities provided by Buyer.  Buyer may return shipments in excess of quantities released or ordered to Seller at Seller's expense for all packing, handling, sorting and transportation charges.  A provision providing for Seller to provide a percentage or range of percentages of Buyer's requirements is not a guarantee of any specific quantity of Goods that must be purchased by Buyer and the actual range of purchases pursuant to Releases can be substantially different from the percentages given, without any change in the obligation of Seller.  A reference in a Blanket Order to a range or a specific quantity is an estimate based upon information from Buyer's Customer, the market, or other sources and is not a guarantee or limitation of any specific, minimum or maximum quantity to be purchased.  Releases may be modified by Buyer at any time to the extent not

3

contrary to specific terms of an Order.  Buyer may temporarily suspend delivery or modify delivery dates for firm or fixed quantities without additional cost.

(b)      Seller's Obligations Regarding Capacity.  A reference to quantities of production Goods included in an Order for tooling or other non-production Goods, is Seller's warranty of the production performance of the Goods, and is not an obligation for the issuance of an Order for any production Goods or for a particular quantity of production Goods.  A reference in an Order to a minimum or maximum quantity of supply of Goods is a warranty by Seller of its commitment to maintain the indicated capacity and production levels, and is not a guarantee of a quantity of Goods to be ordered by Buyer.  Seller is responsible for any costs incurred to comply with Buyer's Releases, regardless of estimated quantities, including but not limited to costs to increase capacity above estimated maximum quantities in an Order.  Seller shall maintain production and delivery capacity so that deliveries can be made in accordance with Buyer's Releases.  Seller shall immediately inform Buyer if there is any risk of deviation from the Releases (including but not limited to potential labor disputes) and shall take all available measures to avoid such deviation.  Seller is aware that the actual need for the Goods may be driven by the requirements of Buyer's Customer, and that Seller and Buyer must adopt a flexible approach to adjust to these and other contingencies, without additional payment to Seller.

(c)      Time Limitation on Claims.  All claims related to Buyer's alleged failure to comply with obligations to release and/or purchase firm or other quantities must be made in writing within 120 days of date such claim accrues or it is barred, released and abandoned.

5.      **Electronic Data Interchange**.  Seller shall comply with all Buyer Guides and requirements related to participation in electronic data interchange and computer access.  Seller shall, at Buyer's request, connect to Buyer's electronic data interchange ("EDI") system at Seller's cost.  All transactions initiated under EDI shall be governed by the terms contained in Buyer's transmissions, except that standard terms and conditions which may be a part of Buyer's EDI system shall be supplemented by these Terms.  A transmission is signed if it can be identified as being sent from the Buyer or Seller.

6.      **Delivery**.  Seller shall maintain a 100% on time delivery record and a 100% compliance record with other Order requirements.  Delivery must be on the dates indicated in an Order, if any, unless otherwise directed by Buyer.  Seller shall comply with delivery, documentation, marking, and other logistics, and other requirements in Buyer's Guides and Customer's requirements.  Time is of the essence as to delivery and other performance by Seller.

7.      **Changes.**

(a)      Required Changes and Requests for Adjustments.  Buyer reserves the right at any time to make changes in quantities, drawings, specifications, testing or quality control, packing, shipment, scope of work and other specific terms of an Order.  The specifications shall include those in an Order and any statement of work or statement of requirements issued by Buyer or its Customer.  Any purported change shall be binding on Buyer only if made in a written Order amendment from Buyer.  Seller shall consider and advise Buyer of the impact of a design, materials or other change on the Goods and the system or assembly in which the Goods covered by an Order are used.  Any actual or projected impact on price (higher or lower) or time for performance necessarily resulting from such changes shall be reported by Seller to Buyer, and any adjustment to price or schedules shall be requested by Seller in writing, with all supporting documentation within 10 days of receipt of Buyer's

4

written notice of requested change or a withdrawal of suspension under Section 6 or within such other time as Buyer may direct or as may be required by Buyer's Customer.  Time is of the essence for such request.  Buyer shall issue an Order amendment providing for any change with an equitable adjustment in its discretion consistent with the following if it agrees with Seller's request.  Notwithstanding anything to the contrary, if adjusted, the price shall be adjusted solely to compensate Seller for increased costs of materials and other direct production costs (excluding overhead and profit) necessarily incurred as a result of the changes, and the terms for performance shall be adjusted only for the period actually required to comply with the changes.  Seller shall diligently perform an Order and all changes while its request is being evaluated and during any period of dispute regarding Seller's requested changes.  Any such claim by Seller for adjustment to time for performance or price under an Order must be solely and directly the result of the change directed by Buyer and any notice of such claim shall be effective only if accompanied by all relevant information sufficient for Buyer to verify and evaluate such request.  Buyer shall have the right to audit all relevant records, facilities, work or materials of Seller to verify any request.  Nothing in this Section shall excuse Seller from performing promptly in accordance with an Order as changed by Buyer, regardless as to a change in a part number or the extent of the changes to the Goods provided the Goods as modified perform the same general function and are within the capabilities of Seller and available sub-suppliers.

(b)      Limitation on Changes.  Without the prior approval of Buyer on the face of an Order amendment Seller shall not make any changes to the Goods or Seller's performance under an Order, including, without limitation, changing:  (i) any third party supplier to Seller of services, raw materials or components used by Seller in connection with its performance, (ii) the facility from which Seller or such supplier operates, (iii) the price of any of the Goods, (iv) the nature, type or quality of any services, raw materials or goods used by Seller or its suppliers; (v) the fit, form, function, appearance, performance of any Goods; or (vi) the production method or any process or software used in the production or provision of any Goods.   Any changes by Seller to the Goods or Seller's performance under an Order without such approval by Buyer shall constitute a material breach of an Order.

8.      **Service and Replacement Parts**.  Seller shall sell Goods to Buyer as ordered and released by Buyer for use as production and as service and aftermarket replacement parts.  During the period in which Buyer is required by its Customer to provide service or replacement parts, or for 15 years after the end of production, whichever is longer, Seller shall sell Goods to Buyer as ordered to fulfill Buyer's service and replacement parts requirements.  Unless otherwise agreed to by Buyer in writing, the price during the first three years of this period shall be those in effect at the conclusion of purchases for use in production for the Customer's production plus any actual costs for any unique packaging required for Goods intended for service and aftermarket.  For the remainder of this period, the price for Goods shall be as agreed to by the parties, not to exceed the lower of:  (i) the cost of manufacture and a reasonable contribution to overhead and profit (not to exceed the percentages of such items on Goods at the end of production Goods); or (ii) the price at which Buyer is obligated to sell to its Customer.  When requested by Buyer, Seller shall make service literature and other materials available in English at no additional charge to support Buyer's service and replacement part sales activities.

9.      **Risk of Loss and Title to Goods.**

(a)      Risk of Loss.  All shipments are at the risk of Seller until receipt at Buyer's location or other final destination designated in an Order or other writing by Buyer, regardless of the

delivery point pursuant to the delivery terms, unless risk of loss is otherwise assumed by Buyer in writing. Seller shall insure the Goods at their replacement value for the benefit of Seller and Buyer as their interests may appear and provide to Buyer proof thereof. If risk of loss is assumed by Buyer, all risk casualty insurance for replacement value must be primary and provided by Seller for the benefit of Buyer. The cost of any insurance shall be paid by Seller unless otherwise agreed in writing by Buyer. Under no condition will the risk of loss be that of Buyer, unless such insurance is provided and maintained. Risk of loss shall not be governed by transfer of title.

(b)     Title to Goods. Title to all Goods shall vest in Buyer the earlier of the date of an Order and their identification to an Order. Identification shall occur not later than the date Seller acquires or begins manufacture of the Goods. Buyer's obligation to pay for Goods is limited by the terms of an Order.

(c)     Right to Possession. Buyer has the right to possession of all Goods at all times from the time the Goods are identified to an Order whether or not Seller is in default subject to Buyer's obligation to pay for the Goods upon obtaining possession. This right is separate and apart from any Security Interest.

10.     **Maintenance and Safe Use.** Seller shall provide to Buyer with the Goods, in writing, in English (subject to any mandatory translation required by any applicable law in the location of destination or which Seller shall provide) all information necessary: (a) for the safe installation, use, maintenance and repair of the Goods; (b) to maximize the efficient use and useful life of the Goods; and (c) to comply with any applicable labeling, notice, or warning law. Prior to and with the shipment of the Goods, Seller shall furnish to Buyer sufficient warning and notice in writing (including material safety data sheets and appropriate labels on the Goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the Goods, together with such special handling instructions as may be necessary to advise carriers, Buyer, Customers, and end users if applicable, and their respective employees, how to exercise that measure of care and precaution that will best prevent bodily injury (including death) or property damage in the handling, transportation, processing, use or disposal of the Goods, containers and packing shipped to Buyer. Seller shall promptly furnish to Buyer in addition to standard material safety data sheets: (i) a list of all ingredients in the Goods; (ii) the amount of all ingredients; (iii) information concerning any changes in or additions to such ingredients; and (iv) other information required by International Material Data System, consumer protection laws and conflict minerals regulations.

11.     **Confidentiality and Intellectual Property.**

(a)     Confidentiality. At all times prior to, during and after an Order, Seller shall: (i) maintain the confidentiality of any information disclosed by Buyer or any affiliate, Customer or contractor, including for example only, any technical, process or economic information derived from drawings, specifications, samples and other data furnished by Buyer in connection with an Order, whether or not identified as "confidential" upon disclosure ("Confidential Information"); (ii) not disclose or permit the disclosure of any Confidential Information to any person other than its employees or subcontractors for whom such knowledge is essential for performance of an Order; (iii) not use Confidential Information except for performance of an Order; and (iv) not disclose any of the terms of an Order or any details or characterization of Buyer's performance of an Order. Seller shall immediately notify Buyer of any disclosure of any Confidential Information that is not permitted by these Terms or other misuse of any Confidential Information or breach of these Terms. Except as

6

required for the efficient performance of an Order, Seller shall not:  (x) use Confidential Information or make copies or permit copies to be made of Confidential Information without the prior written consent of Buyer; or (y) sell to any third party any products which are constructed with or incorporate Confidential Information obtained by Seller or from reverse engineering of the Goods.  If any copies of Confidential Information are made with prior consent, notice referring to the requirements of this Subsection shall be placed on the copies.  Without limiting the direct liability of Seller's employees, subcontractors and others who may have received Confidential Information directly or indirectly from Seller, Seller shall be responsible for the improper disclosure or other misuse of Confidential Information by Seller's employees, subcontractors and others obtaining Confidential Information from Seller, and Seller shall immediately take such steps as may be necessary to terminate any continuing improper disclosure or misuse by any of Seller's employees, subcontractors and others of which Seller becomes aware.  Buyer makes no representation, condition or warranty of any kind, express or implied, with respect to any Confidential Information.  Buyer may, at its sole discretion, elect at any time, by written notice to Seller, to terminate Seller's further use of Confidential Information for any purpose, other than completion of contractual obligations with Buyer.  Upon receipt of such notice, Seller shall, and shall cause Seller's employees, its subcontractors, and others to promptly cease all further use of Confidential Information, return to Buyer all physical materials containing Confidential Information, whether the materials were originally provided by Buyer or copied or otherwise prepared by Seller or any of Seller's employees or subcontractors, and erase or otherwise destroy any Confidential Information kept by Seller or any of Seller's employees or contractors in electronic or other non-physical form.  Such termination by Buyer shall not affect Seller's continuing obligations in this Subsection.  These obligations are in addition to other obligations relating to Confidential Information under other agreements signed by the parties.

(b)      Seller's Non-Confidential Information.  Any knowledge or information disclosed by Seller or on its behalf to Buyer, its affiliates or contractors, which in any way relates to an Order, shall not, unless otherwise specifically agreed to in writing by Buyer, be deemed confidential and/or proprietary information, and shall be acquired by Buyer, free from any restrictions (other than restrictions under valid patents), as part of the consideration for an Order, and Buyer may disclose such information.

(c)      Indemnification.  Seller, at its expense, shall defend, indemnify and hold harmless Buyer and its successors, assigns, Customers and users with respect to every claim that may be brought against Buyer or others that use the Goods, for any actual or alleged infringement of any present or future patent, copyright, industrial design right or other proprietary right based on Seller's activity under an Order, or the manufacture, sale or use of the Goods:  (i) alone; (ii) in combination by reason of their content, design or structure; or (iii) in combination in accordance with Seller's recommendations.  Seller shall investigate and defend or otherwise handle every such claim, and at Buyer's request, assist Buyer in Buyer's investigation, defense or handling of any such claim.  Seller shall pay all expenses and damages or settlement amounts that Buyer and others selling Buyer's products or using the Goods of an Order may sustain by reason of each such indemnified claim.  If the use or sale of the Goods is enjoined, Seller shall, at its own expense and at Buyer's option, either:  (x) procure the right to continue using the Goods; (y) replace the Goods with a non-infringing equivalent; or (z) remove the Goods and refund the purchase price and the transportation and installation costs thereof.  Seller's obligations shall apply even though Buyer furnishes all or any portion of the design and specifies all or any portion of the processing used by Seller and, unless Seller provides a non-

infringing equivalent acceptable to Buyer and its Customer, even if Buyer has notice of a claim of infringement and continues to purchase, use, or resell Seller's Goods.

(d) <u>Specific Disclosures Regarding Patents</u>.  Seller shall specifically identify in a writing delivered to Buyer prior to any shipment, all components, processes, tooling or equipment used in the production of the Goods that are subject to any patent of Seller or third party.  Seller shall obtain from third parties for the benefit of Seller, Buyer and Buyer's contractors and Customers, any rights necessary to make, use and sell the Goods.

(e) <u>Restrictions on Seller's Sale Activities</u>.  Except for sale to Buyer, Seller shall not manufacture or sell any product which uses the design or the product model numbers or other designation, of the Goods sold under an Order or any product which is produced with the tooling owned by Buyer or its Customer used to produce the Goods.  Seller shall not sell, attempt to sell, or assist a third party in any way in its attempted sale, of any personal property or services to a Customer which would replace or reduce any supply by Buyer to a Customer of the Goods separately or as a component of an assembly.

(f) <u>Exclusive Ownership of Developed IP for Buyer</u>.   Each party shall retain exclusive ownership of all patents, patent applications, inventions, developments, trade secrets, ideas, improvements and other intellectual property rights (hereinafter called "Intellectual Property") which were its property prior to the date of an Order ("Background IP"), provided that Seller hereby grants to Buyer a worldwide, nonexclusive, royalty free, sublicensable (to Buyer's Customer(s) under an Order), perpetual, nontransferable and irrevocable during the term of an Order license to use, sell, offer to sell, practice, import, export, distribute, reproduce, modify, prepare derivative works from, display, and perform all Background IP in connection with the Goods.   Any Intellectual Property which is conceived, reduced to practice, discovered, invented, and/or developed as part of an Order, either alone or jointly with others, shall be owned exclusively by Buyer.   Upon request, Seller shall sign all documents and otherwise cooperate with Buyer as necessary to assign, confirm and perfect the exclusive ownership of all Intellectual Property rights in the Goods to Buyer.

(g) **Software Rights**.  When Goods include computer programs, including, where applicable, object code (including microcode) and source code, and any enhancements, modifications, updates or releases relating thereto ("Software"), Seller shall obtain and provide to Buyer unrestricted usage rights, which shall be freely transferable, and shall provide Buyer with all documentation related to the Software, including user manuals, training materials, product descriptions and applicable specifications, technical manuals and supporting materials, developed documents, and other printed or electronic information.  No portion of the Software delivered to Buyer will contain any undisclosed features or any "back door," "time bomb," "Trojan horse," "worm," "drop dead device," "virus," or other computer software routines or hardware components designed to (i) permit access or unauthorized use of either the Software or Buyer's computer systems, (ii) disable, damage or erase the developed Software or data, or (iii) perform any other such actions, and the Software shall not contain preprogrammed preventative routines or similar devices which prevent Buyer from exercising the rights granted under an Order and/or from utilizing the Software for the purpose for which it was designed.

12. **Quality and Inspection**.

(a) <u>Compliance</u>.  Seller shall comply with all provisions of Buyer's Guides relating to quality, testing, inspection, and other matters.

(b)  <u>Goods Received</u>.  All Goods shall be received subject to right of inspection and rejection by Buyer and its customer.  Buyer and its customer shall have a reasonable time, but not less than 90 days after delivery, to inspect delivered Goods prior to accepting the Goods.  Non-conforming and defective Goods will be held for Seller's instructions at Seller's risk and expense subject to Buyer's other remedies.  Goods returned as defective or nonconforming shall not be returned to Buyer without Buyer's approval.  Payment for the Goods shall not constitute an acceptance.  Buyer may rely on Seller's obligations to provide conforming Goods, and Buyer and Buyer's customer are not obligated to inspect goods prior to assembly or use.  Acceptance shall not release Seller's responsibility for non-conforming or defective Goods. Buyer may elect to revise or rework Goods at Seller's cost instead of rejecting.

13.  **<u>Warranties.</u>**

(a)  <u>Express Warranties</u>.  Seller warrants and represents to Buyer that all Goods shall be:  (i) merchantable; (ii) free from failure in the final product as sold to the end user; (iii) free from all defects, including for example only, design, workmanship and materials; (iv) fit for the particular purposes for which they are purchased, including the specified form, fit, function and performance as a component and in the component system and as a part of the final product subsystem, in both the location within the final products to be sold by Buyer and its Customer and in the environment in which the Goods are or reasonably may be expected to perform; (v) in strict compliance with the specifications, samples, drawings, designs, Seller's advertisements, statements on containers and labels, statements of work and requirements of Buyer and its Customers and other requirements (including performance specifications) approved or adopted by Buyer as of the date of delivery or such other date provided by Buyer in writing; (vi) in strict compliance with all government requirements; (vii) composed of all new materials and components; (viii) produced or, in the case of services, rendered by experienced and well trained personnel in a professional and workmanlike manner and in accordance with industry best practices; (ix) in conformity with all sales and other information provided by Seller orally or in writing; and (x) free of liens.  If there is any conflict or overlap of provisions regarding Seller's warranties, the more demanding provision as elected by Buyer shall apply.  Any attempt by Seller to limit, disclaim, or restrict any such warranties or any remedies of Buyer, by acknowledgement or otherwise in accepting or performing an Order, shall be null, void, and ineffective without Buyer's prior written specific consent.  Approvals by Buyer of Seller's design drawings, specifications, samples, designs and other data, are to assist Seller without charge to Seller, but they do not replace, modify or cause Seller to share, Buyer's responsibility and do not waive, modify, or limit any warranty of Seller.

(b)  <u>Warranty Period</u>.  As to each of the Goods, each of Seller's warranties in Subsection (a) begins on the date of delivery to Buyer without affecting Buyer's right to reject and continues until the last to occur of the following:  (i) four years after delivery to Buyer; (ii) the expiration of the longest time period which Buyer or Buyer's Customer or the original equipment manufacturer in which the Goods may be installed may be required, by contract or law, to repair or replace the Goods or Buyer's product incorporating the Goods; or (iii) the period provided by applicable law for the Goods as sold to a consumer.  The statute of limitations period applicable to any breach of warranty will be the longest statute of limitation period for breach of contract, products liability or indemnity claims in any applicable jurisdiction or, in the case of any recall campaign, the longest time period provided by the U.S. federal, state, or foreign government where the Goods are used.  Any statute of limitation or repose shall begin to run when Buyer becomes aware of the breach

of warranty or other breach. If Buyer or its Customer, voluntarily or pursuant to a government mandate, issues a service bulletin or instructions to dealers or makes an offer to owners of vehicles (or other finished products) on which the Goods, or any parts, components or systems incorporating the Goods, are installed to provide remedial action to address a defect or condition that relates to safety or the failure of the product to comply with any applicable law, safety standard or guideline, whether in connection with a recall campaign or other Customer satisfaction or corrective service action (a "Remedial Action"), the warranty shall continue for such time period as may be dictated by Buyer's Customer or the federal, state, local or foreign government where the Goods are used or provided and Seller shall fully comply with the requirements of the Remedial Action. The warranty period for Goods other than those used as components in further production shall be the longer of two years, 4,000 hours of operation after final acceptance by Buyer, or the period stated in Seller's sales materials.

(c) **Warranty Intent and Purpose**. All warranties are intended to provide Buyer with protection from any and all warranty claims brought against Buyer by its Customer and any other third party. This includes, but is not limited to, satisfying any customer-required warranties relating to the Goods or products into which the Goods are incorporated. All such Customer-required warranties are incorporated by reference and binding on Seller.

(d) Notice of Breach. The following communications shall each constitute notice of breach of warranty under an Order: (i) any communication or notice specifying a defect, default, claim of defect or other problem or quality issue with any Goods sold under an Order; or (ii) any communication to Seller claiming that Seller's Goods are non-conforming or in breach of any warranty or that Seller is in default under an Order. Any such notice of breach by Buyer may only be rescinded in a writing signed by Buyer's purchasing manager or officer.

(e) Buyer's Defense of Third Party Claims. To mitigate its damages, Buyer may elect to fully defend or respond to any claim from any Customer or other third party that any Goods supplied by Seller are defective, in breach of warranty, or otherwise did not meet applicable legal or contractual requirements because such claimant may attempt to hold Buyer responsible for problems caused in whole or in part by Seller. Seller and Buyer agree that this defense is in the interest of both Seller and Buyer. Seller waives the right to assert that Buyer took any such position in any way limits or waives Buyer's right to assert a claim against Seller by Buyer for breach of warranty, contribution, indemnification or other claim that may arise from or be related to the subject matter of any such third party claim. If Seller wishes to participate in any of the negotiations with Buyer's Customer or other third party regarding any of the foregoing such claim or in any related litigation or defense of any such claim, which participation shall be at the sole discretion of Buyer, then, in each case that Seller receives a notice of default or claim of breach, Seller shall give Buyer prompt written notice of its request to participate, which notice shall describe with particularity the details of Seller's position regarding the defense of the alleged default or breach.

(f) Costs of Remedial Action. Notwithstanding the expiration of the warranty period in these Terms, Seller shall be liable for all costs and damages associated or incurred in connection with the conduct and/or administration of any Remedial Action is caused in whole or in part by any failure of the Goods to conform to the warranties set forth in an Order, plus all reasonable expenses associated with determining whether a Remedial Action is or was necessary, plus all damages and remedies specified elsewhere in the Terms. Buyer shall bear the initial burden of proving that a Remedial Action was caused in whole or in part by a failure of the Goods to conform to the warranties set forth in an Order, including, by way of example only, through the use of statistical analysis or other

10

sampling methodology to meet this burden, after which the burden of proof and of persuasion shall shift to Seller to prove that the Remedial Action was caused entirely by some other cause, unrelated to a breach of warranty. Any Remedial Action involving Goods sold to Buyer shall be treated confidentially and separately and distinctly from similar Remedial Actions of other products of Seller; provided that such separate and distinct treatment is lawful and Seller shall provide at least the same protection and remedies to Buyer on such Goods as Seller provides to its other customers in connection with such similar Remedial Actions.

(g) <u>Work Environment</u>. Seller warrants that no child, prison, forced or involuntary labor shall be used by Seller or its subcontractors in the production of Goods. Seller and its subcontractors shall maintain a work place free from physical abuse and any practice in violation of local law. Seller and its subcontractors shall provide a healthy, safe work environment, wages and benefits as required by applicable law, freedom of association and reasonable working conditions.

(h) <u>Cumulation</u>. All warranties and remedies provided by these Terms are cumulative and in addition to those provided by law and shall survive testing, inspection, and acceptance of the Goods.

(i) <u>Assignability</u>. All warranties under this Section are assignable by Buyer to its Customers, end users and other third parties without notice to or consent by Seller.

14. **Indemnity, Insurance and Performance on Buyer's Premises.**

(a) <u>Indemnity and Liability</u>. In addition to any rights to contribution, common law indemnity, or other remedy provided to Buyer by applicable law, Seller shall defend (at Buyer's request), indemnify, and hold harmless Buyer and Buyer's employees, officers, directors, suppliers and Customers ("Indemnitees") from and against any and all claims, damages, and expenses, including expenses and reasonable legal fees relating to the investigation, pursuit, defense and handling of any claims, for personal injury, including death, property loss or damage, or any other loss, expense, or damage ("Liabilities"), brought against Indemnitees arising out of or in any manner connected with: (i) the design, engineering, production, labeling, use, sale, storage, condition, and/or safety of the Goods, whether or not incorporated in another product; (ii) any act or omission of Seller; and/or (iii) breach of any representation, warranty or covenant by Seller or a supplier of Seller, or employees or invitees of either of them, and in each case whether or not caused or contributed to by the fault or negligence of any of the Indemnitees. For clarity, Seller shall indemnify, defend and hold harmless Indemnitees even if any or all of the claims or Liabilities incurred by any or all of the Indemnitees are caused in part by the concurrent actions or negligence of one or more of the Indemnitees. Seller waives the application of the doctrine of comparative negligence and other doctrines that may allocate the liability covered by Seller's indemnity, provided that Seller shall not be obligated to indemnify Indemnitees from any claim which arises from the sole negligence or intentional tort of the Indemnitees. Seller waives and releases any rights of contribution, indemnity or subrogation it may have against any of the Indemnitees as a result of any indemnity claim asserted by another Indemnitee under this Section. Seller waives any provision of any workers' compensation act or other similar law whereby Seller could preclude its joinder by Indemnitees as an additional defendant, or avoid liability for damages, contribution or indemnity in any action at law, or otherwise where Seller's or its subcontractor's employees, heirs, assigns or anyone otherwise entitled to receive damages by reason of injury or death brings an action at law against any Indemnitee. Seller's obligation to Indemnitees shall not be limited by any limitation or exclusion on the amount or type of damages, benefits or compensation payable by or for Seller

otherwise provided under an Order or other agreement or under any workers' compensation acts, disability benefit acts, or other employee benefit acts. The obligations in this subsection are in addition to Seller's duty to provide insurance. Seller's obligations hereunder will not be limited to the extent of any insurance available to or provided by Seller. This Subsection shall not apply to any liability for which the law prohibits an Indemnitee from obtaining indemnity.

(b) <u>Insurance</u>. Seller shall obtain and maintain insurance coverage in the following minimum amounts with reputable and financially responsible underwriters acceptable to the Buyer and having an A.M Best rating of at least A-VIII: workmen's compensation - statutory limits for jurisdictions in which work is to be performed; employer's liability with limits not less than $10,000,000; comprehensive general liability with limits not less than $10,000,000 per occurrence; automobile liability/bodily injury with limits not less than $5,000,000 per person for bodily injury and $10,000,000 per accident for bodily injury, and $5,000,000 per accident for property damage. An umbrella policy may be used to satisfy the required policy limits. All policies shall be issued by an insurer licensed to do business in the national, state/provincial, and local jurisdiction where Buyer shall use and sell the Goods. The comprehensive general liability insurance shall be an occurrence form of policy and cover global liability arising from products liability, premises, operations, independent contractor, products-completed operations, personal injury and advertising injury, recall and liability assumed under contract. Buyer shall be named as an additional insured under all policies except workers compensation. The workers compensation, general liability and automobile liability and any umbrella liability policies must be primary and include a permission of waiver of subrogation in favor of the Buyer. Seller waives subrogation against Buyer. Seller shall furnish to Buyer a certificate of insurance completed by its insurance carriers certifying that the required insurance coverages are in effect and will not be canceled or materially changed or allowed to expire until 30 days after prior written notice has been delivered to Buyer. The certificate shall set forth the amount of each coverage, number of policy, date of expiration and Buyer as an additional insured. If Seller is a self-insurer of workers compensation liability as may be permitted by applicable law, Seller shall furnish Buyer a certificate of the Department of Labor, or similar government authority of the jurisdiction in which any labor is to be performed approving the self-insurance. The purchase of such insurance coverage or the furnishing of a certificate shall not be a satisfaction of Seller's liability hereunder, or in any way modify Seller's obligation to indemnify Buyer.

15. <u>**Termination for Other than Default**</u>. In addition to any other rights of Buyer to cancel or terminate an Order or any Releases, Buyer may at its option immediately terminate all or any part of an Order or any Releases on 14 days' notice, for (a) the termination or material reduction in Customer demands; (b) a change in Buyer's requirements; (c) Seller's failure to remain competitive in price, quality, delivery, and/or technology whether or not such failure would be a default or breach by Seller; or (d) Buyer's convenience, by giving written notice thereof to Seller. Seller shall cooperate with Buyer in any transfer of production or other performance to a new supplier. Upon a termination under this Section, Buyer shall pay to Seller the following amounts without duplication: (x) the Order price for all conforming Goods which have been completed in accordance with an Order not previously paid; (y) the actual direct cost of protecting Buyer's property; and (z) the actual direct costs of work in process and raw materials reasonably incurred by Seller in furnishing or preparing to furnish the Goods under an Order or any Releases to the extent such costs are reasonable in amount and are properly allowable or apportionable, under generally accepted accounting principles, to the terminated portion of an Order or any Releases issued pursuant to an Order; less, however, the reasonable value or cost

(whichever is higher) of any Goods or materials subsequently used or sold by Seller with Buyer's written consent and of the cost of any damaged or destroyed Goods or materials.  Notwithstanding the foregoing or any transfer to Buyer, Buyer shall not be liable to pay for finished Goods, work in process or raw materials obtained, fabricated or processed by Seller in amounts in excess of those authorized as firm in Releases (if Releases are required or contemplated by an Order), for any undelivered Goods which are Seller's standard stock or which are readily marketable, or for any finished Goods or materials which are not promptly delivered to Buyer after request by Buyer.  Payments made under this Section shall not exceed (i) the aggregate price payable by Buyer for finished Goods which would have been produced by Seller for firm quantities of finished Goods and (ii) the cost of materials and work-in-progress, under Releases outstanding at the date of termination for firm quantities of finished Goods and materials.  Except as provided in this Section, Buyer shall not be liable for and shall not be required to make any other payments to Seller, directly or on account of claims by Seller or Seller's suppliers or subcontractors, arising from termination of an Order under this Section, including but not limited to for loss of anticipated profit, revenue or opportunity, and for business interruption, unabsorbed overhead, product development and engineering costs, facilities and equipment, rearrangement cost or rental, unamortized depreciation costs, general and administrative burden charges, or interest on claims.  Within 60 days from the effective date of termination, Seller shall submit a comprehensive termination claim to Buyer with sufficient supporting data to permit Buyer's audit and shall thereafter promptly furnish such supplemental and supporting information as Buyer shall request.  Buyer, however, shall have no obligation to Seller under this Section if Buyer terminates its purchase obligations under an Order or any Release for any reason other than for Buyer's convenience under Subsection (d) above, except to the extent Buyer recovers from its Customer for amounts otherwise due to Seller from Buyer under this Section.  Payment under this Section shall constitute the exclusive liability of Buyer if an Order is terminated by Buyer pursuant to this Section.  Seller has no right to terminate an Order except for a material breach by Buyer of Buyer's payment obligations as herein stated, to the extent of an amount not disputed by Buyer, provided that Seller shall first give Buyer written notice of any such breach and a reasonable opportunity (not less than 30 days) to cure.  For all other Buyer's breaches, Seller's sole remedy is to sue for direct damages as may be limited by Terms and Buyer shall continue to supply.

16. **Security and Solvency.**

(a) Security Interest.  Seller grants to Buyer a security interest ("Security Interest") in the materials, components, contracts, Intellectual Property, and all other property and any proceeds thereof that may be acquired or allocated by Seller for use in the design, acquisition, assembly, and manufacture of the Goods, including Required Tooling and Furnished Property and in the completed Goods ("Collateral") to secure Seller's return of any deposits and Seller's performance of other obligations under an Order.  The Security Interest attaches at the time the Collateral is identified to an Order.

(b) Seller's Financial Information.  Upon request by Buyer, Seller shall promptly deliver to Buyer or its independent financial risks advisor the following financial and other information:

(i) Upon receipt of an Order, Seller's financial statements for the two most recently ended fiscal years (audited, if available);

13

(ii)     Within 120 days after the end of each fiscal year, Seller's financial statements for the most recently ended fiscal year (audited, if available);

(iii)    Within 15 days after the end of each fiscal quarter, Seller's financial statements for the most recently ended fiscal year; and

(iv)    Any other information that Buyer may reasonably require to demonstrate that Seller will be able to perform its obligations under an Order (including but not limited to production schedules, accounts receivable agings, accounts payable agings, and organizational charts).

17.    **Default and Remedies**.

(a)     <u>General</u>.  Seller shall be in default:  (i) if Seller fails to perform any obligation within the time specified in an Order (including a Release) or any extension thereof granted by Buyer in writing, or upon Buyer's demand if no time has been specified; (ii) if Seller fails to make progress in the performance of any obligation so as to make Buyer reasonably apprehensive about Seller's ability or willingness to perform its obligations; (iii) if Seller repudiates or is in breach of any provisions of an Order, including any of Seller's warranties; or (iv) if Seller's performance of its obligations, or if any of the Goods, are found at any time to be defective in design, material or workmanship, or otherwise not in conformity with the requirements of an Order, and if in any of these defaults, the effects of which default can be cured, Seller does not cure such failure within seven calendar days (or such other period as Buyer may authorize in a notice of breach or default).  If Seller for any reason anticipates difficulty in complying with a required delivery or other date, or in meeting any of the other requirements of an Order, Seller shall promptly notify Buyer in writing of the potential default, the cause thereof, and the estimated length of the anticipated default.  Buyer is under no obligation to waive any default whether or not it has waived prior defaults.

(b)     <u>General Remedies</u>.   Upon Seller's default, Buyer may by written notice of default to Seller, in addition to such other rights, remedies and choices as it may have under an Order or by law, at its option and sole discretion take one or more of the following actions: (i) rescind, cancel or terminate an Order or any portion thereof; (ii) reject and return non-conforming or defective Goods at Seller's expense; (iii) require Seller to inspect the Goods and remove and replace non-conforming or defective Goods with Goods that conform to an Order; and/or (iv) take any other action at Seller's cost which Buyer determines in its reasonable judgment is necessary to cure Seller's default and/or mitigate the effect of Seller's default.  If Buyer elects option (iii) and Seller fails to promptly make the necessary inspection, removal and replacement, Buyer may at its option and Seller's cost, inspect and repair or replace the Goods.  Buyer may take remedial and other action based on one or more Sections of this Agreement as alternative and/or cumulative basis.  Seller shall continue performance of an Order to the extent not terminated as may be directed by Buyer and shall be liable to Buyer for any excess costs for alternative products or services obtained by Buyer.  Buyer, at its sole discretion, may also elect to extend the delivery schedule and/or to waive other deficiencies in Seller's performance; in which case an equitable reduction in an Order price shall be established by Buyer to compensate Buyer for its damages.

(c)     <u>Damages</u>.   Seller shall reimburse Buyer for all direct, indirect, incidental, consequential and special damages, and damages caused by or related to Seller's default including but not limited to lost profits, revenue and opportunity and business interruption.  Such damages shall include but are not limited to, costs, expenses and losses incurred directly or indirectly by Buyer or its

Customers:  (i) in inspecting, sorting, repairing or replacing non-conforming Goods; (ii) resulting from production interruptions; (iii) in conducting any Remedial Action; or (iv) resulting from personal injury (including death) or property damage.  Damages include reasonable actual attorneys' and other professionals' fees incurred by Buyer.  Buyer's indirect costs include but are not limited to such administrative charges as Buyer establishes from time to time to compensate Buyer for its time and effort in addressing issues related to Seller's default.  Buyer may also at its option adjust the price of the non-conforming Goods which it elects to accept to reflect the reduced value of the Goods.

(d)  <u>Specific Performance</u>.  Seller acknowledges and agrees that money damages would be difficult to prove and would not be a sufficient remedy for any actual, anticipatory or threatened breach of any Order by Seller with respect to its delivery of Goods to Buyer and that, in addition to all other rights and remedies which Buyer may have, Buyer shall be entitled to specific performance and interlocutory and permanent injunctive or other equitable relief as a remedy for any such breach, without proof of actual damages, without establishing a "balance of convenience", and without bond or other security being required.

(e)  <u>Duty to Deliver</u>.  Seller's continued holding of the Goods, Furnished Property, or Required Tooling, after demand has been made by Buyer for delivery, will substantially impair their value, and Buyer shall be entitled to a court Order for possession without bond.  Seller shall continue to sell and deliver Goods under an Order during any dispute with Buyer provided Buyer continues to pay Seller amounts owed in excess of any right of offset.

(f)  <u>Transition of Supply</u>.  In connection with the expiration, termination or non-renewal of an Order, in whole or in parts, the expiration, based on any decision by Buyer to source the Goods from any alternate supplier(s), Seller shall cooperate with Buyer in the transition of supply of the Goods, including for example only the following:  (i) Seller shall continue production and delivery of all Goods as ordered by Buyer, at the prices and other terms stated in an Order, without premium or other condition, during the entire period reasonably needed by Buyer to complete the transition to the alternate supplier(s), such that Seller's action or inaction causes no interruption in Buyer's ability to obtain the Goods as needed; (ii) at no cost to Buyer, Seller shall promptly provide all requested information and documentation regarding and access to Seller's manufacturing process, including on-site inspections, bill-of-material, data, tooling and process detail and samples of the Goods and components; and (iii) subject to Seller's reasonable capacity constraints, Seller shall provide special overtime production, storage and/or management of extra inventory of the Goods, extraordinary packaging and transportation and other special services (collectively "Transition Support") as expressly requested by Buyer in writing.  If the transition of supply occurs for reasons other than Buyer's default, Buyer shall, at the end of the transition period, pay the reasonable, actual cost of Transition Support as requested by Buyer in writing and incurred by Seller, provided that Buyer has approved Seller's estimate of such costs prior to Seller incurring such costs.

18.  **Property Furnished or Purchased by Buyer or Its Customer for Seller's Use.**

(a)  <u>Ownership</u>.  Unless otherwise agreed in a writing signed by Buyer, all tooling, tooling designs, equipment, equipment designs, material and other property of every description furnished to Seller by Buyer or its Customer, or acquired or developed by Seller but paid for or to be paid for by Buyer or its Customer as a separate price or amortized in the price of the Goods, and any materials affixed or attached thereto and replacement thereof (all of which constitutes "Furnished Property"), shall be and remain exclusively the personal property of Buyer or its Customer and shall be

15

held as an at-will bailment and in trust for the benefit of Buyer or its Customer as their interests may exist.  All additions, attachments, accessories and repairs to the Furnished Property, and replacements thereof, shall be deemed Furnished Property and shall become the exclusive property of the owner of the affected Furnished Property without payment.  Seller shall not substitute any of its own property for use in place of Furnished Property and to the extent it does so, such property shall become the Furnished Property of the owner of the property replaced.  All designs, and Intellectual Property included in Goods or Furnished Property, are owned by Buyer and any rights of Seller therein shall be transferred immediately by Seller on Buyer's request in a format dictated by Buyer, and shall not be encumbered in any way by Seller.  Title to the Furnished Property which is acquired by Seller and its contractors, and the components thereof, shall vest in Buyer upon its acquisition or production even though the Furnished Property is not completed.  Seller shall sign separate at-will bailment and other agreements confirming the status of Furnished Property under these Terms and other terms as required by Buyer if requested by Buyer.  Seller is also bound by any additional obligations relating to Furnished Property which are contained in Buyer's contract with its Customer related Furnished Property, Buyer, in its own name, may enforce such obligations on behalf of its Customer.

(b)     <u>Maintenance and Taxes</u>.  Seller shall install, maintain, repair, replace and return Furnished Property in good condition and working order, reasonable wear and tear excepted, at Seller's cost.  Seller shall pay all taxes assessed against the Furnished Property or for its use while in the possession or control of Seller, whether or not Buyer is required by law to pay such taxes.  Risk of loss is on Seller.

(c)     <u>Markings</u>.  Each individual item of Furnished Property (and the container in which it may be stored) shall be plainly and permanently marked or otherwise adequately identified and permanently marked by Seller as the property of Buyer and/or Buyer's Customer as directed by Buyer and with the project and part number on which it is used.

(d)     <u>Use and Safety</u>.  Seller shall not use or permit others to use Furnished Property except to fill Orders.  Seller shall not, under any circumstance, sell or transfer any product or service produced with the Furnished Property except to Buyer and its designees.  Seller shall use Furnished Property in a careful and safe manner.  Seller, at its sole cost and expense, shall furnish any and all appropriate safety systems and training for use of Furnished Property, including any which are integrated into the production process, so as to meet all applicable federal, state, provincial, and local safety statutes, rules, regulations, and/or codes for the place in which the Furnished Property will be used and otherwise to reduce or eliminate all known or reasonably foreseeable risks of injury to users or bystanders.

(e)     <u>Buyer's Warranty Disclaimer</u>.  Seller accepts any completed or in process Furnished Property from Buyer "AS IS" and without any representation, warranty or duty from Buyer except as may be specifically stated as such in an Order.  It is Seller's obligation to determine if the Furnished Property is suitable for its intended purpose.  Seller's use of tooling without any prior written objection delivered to Buyer shall constitute Seller's warranty that the tooling is adequate for Seller to comply with Seller's obligations to produce conforming Goods, in the quantities required by Buyer, and otherwise as required by an Order.  ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT OF BUYER AND ITS CUSTOMER ARE DISCLAIMED.

16

(f)     Express Trust.  Payments made by Buyer for Furnished Property are made by Buyer to Seller in express trust for the benefit of Buyer and of any third party toolmaker and other supplier used by Seller or others to produce all or a portion of the Furnished Property who has a perfected toolmaker's lien or similar lien on the Furnished Property which, under applicable law, is superior to Buyer's interest in the Furnished Property.  Buyer's payments for Furnished Property are in trust and Seller shall hold these payments as trustee in express trust for Buyer and the toolmaker to satisfy such lien.  Seller acknowledges that such toolmaker is an intended third party beneficiary of this Section and that Buyer and the toolmaker each has the right to enforce the trust directly against Seller only.  As an obligation of its position as a trustee, Seller shall provide in its purchase order or other agreement with the toolmaker or other supplier that it shall not include or consent to include Buyer as a party to an action against Seller for payment of all or a portion of the Furnished Property but shall provide notice to Buyer of any action to obtain or retain possession of Furnished Property.  Seller shall at Buyer's request defend and/or indemnify Buyer against any action and the costs thereof, including reasonable attorney fees, by the toolmaker or other supplier against Buyer relating to Furnished Property.

(g)     Liquidated Damages.  Time is of the essence, and any delays will result in substantial damages to Buyer.  Seller shall pay to Buyer one (1%) percent of the purchase price of an Order for Furnished Property or Required Tooling for each week of delay of the final completion or any interim scheduled completion or deliverable resulting from any breach of an Order by Seller, not to exceed ten (10%) percent of the purchase price.  This liquidated damage provision is only to compensate for the period of delay referenced and shall not affect Buyer's right to injunctive and other legal and equitable relief.

19.     **Required Tooling**.

(a)     Required Tooling Defined.  All production aids and equipment which are necessary for Seller to produce Goods in accordance with an Order, including, but not limited to, tooling, jigs, dies, measuring and testing devices, gages, fixtures, molds, patterns, templates, software, hardware, and other personal property used in the production process, whether or not consisting of Furnished Property or property which is owned or leased by Seller or its subcontractors, are included in the term "Required Tooling."

(b)     Maintenance, Repair, Alteration, Use, Replacement, and Insurance.  Seller, at its own expense, shall keep in good condition, repair, and replace when necessary all Required Tooling.  Required Tooling must be designed, maintained and/or repaired by Seller so as to be adequate for production of Goods in compliance with all specifications, at quantities which meet or exceed all quantities in and at quotations, Buyer's forecasts and historical purchase levels, for the duration of an Order, including for service and replacement parts.  Seller shall advise Buyer promptly in writing of any recommended required modification, repair or replacement of Required Tooling.  Within 30 days of the end of each calendar year and upon other demand by Buyer, Seller shall submit to Buyer a service schedule and a description of the condition of each piece of Required Tooling, including photographs. Buyer may inspect Required Tooling and Seller's facilities during normal working hours upon one day's prior notice to Seller. Seller shall not relocate or modify the Required Tooling without the prior written consent of Buyer.  Seller shall be responsible for obtaining any PPAP required because of movement, modifications, repair, replacement, or other events impacting Required Tooling. Seller shall insure Required Tooling with fire and extended all risk coverage insurance for its replacement value and provide Buyer with certificates of insurance evidencing such coverage.  Seller

hereby assigns to Buyer Seller's rights to insurance proceeds on the Furnished Property.  If the insurer does not accept this assignment, Buyer shall sign a separate assignment and instruction to pay proceeds to Buyer.  The cost of changes to Required Tooling necessary to make design changes and specification changes to the Goods authorized by Buyer in writing shall be paid for by Seller unless otherwise provided in an Order.

(c)     <u>Option to Purchase</u>.  Seller grants Buyer an irrevocable option to purchase and take possession of and good title to some or all of the Required Tooling (including leases thereof) as selected by Buyer, that is not Furnished Property and is specific for the production of Goods, upon tender to Seller of a purchase price computed as the book value thereof, less any amounts Buyer has previously paid to Seller in any manner for the cost of Required Tooling (e.g., by separate payment or by an allocated portion of the price of the Goods as shown in an Order or documents provided by Seller such as, for example only, a bill of materials); provided, however, that this option to purchase shall not apply to any Required Tooling used primarily to produce products that are standard stock of Seller sold to purchasers other than Buyer.   As soon as Buyer notifies Seller in writing it wishes to exercise its option to take possession of and title to Required Tooling which is not Furnished Property, Seller's possession of such Required Tooling shall be automatically in the name and on behalf of Buyer and Seller, shall mark it as Buyer's property, shall instruct any subcontractor to do the same, and shall take all other measures to safeguard Buyer's title to Required Tooling until instructed to deliver it to a location specified by Buyer in writing.

(d)     <u>Buyer's Right to Possession and Seller's Duty to Deliver</u>.  On Buyer's request, Seller shall deliver immediately any Furnished Property or purchased Required Tooling to Buyer at Seller's or its contractor's plant or other location specified by Buyer.  Seller is responsible for labor and other costs of dismounting, dismantling, packaging, and otherwise preparing and staging the Required Tooling for delivery.  Seller shall cooperate with Buyer in removing the Required Tooling from the location of Seller or its contractor.  Seller shall have no right, after tender of the purchase price of Required Tooling, to retain possession of any Required Tooling to secure payment of any amounts owed or for any other reason, and Seller waives any common law or statutory lien rights, and acknowledges that a claim for damages (with any bond in the amount of the purchase price of tooling to be purchased as may be required by a court) is an adequate remedy.  If the Required Tooling is not utilized to produce any Goods for Buyer for a period of five years, Seller shall so notify Buyer in writing and request instructions as to the disposition of the Required Tooling.  Seller shall not dispose of any Required Tooling at any time without obtaining prior written approval from Buyer.

(e)     <u>Injunctive Relief</u>.  The Required Tooling is a unique product which is critical in the production of a unique part or assembly.  Seller expressly acknowledges that Buyer is in an industry that has exacting standards for delivery, quality, and other performance including just-in-time delivery requirements.   The failure to produce or deliver the Required Tooling and any finished Goods, materials and work-in-process, in accordance with the requirements of an Order can expose Buyer to significant claims by third parties and a significant loss of business and reputation which will be very difficult or impossible to quantify and for which Seller may be fiscally unable to respond in monetary damages.   Whether or not the parties are in a dispute, Buyer shall be entitled to possession of the Required Tooling on demand and tender of payment to Seller or Seller's tooling subcontractor of any portion of the unpaid purchase price owed Seller under an Order for the Required Tooling, finished Goods, materials, and work-in-process which is not contested by Buyer, and Seller shall be entitled to orders for specific performance, preliminary and permanent injunctions and/or other extraordinary

18

relief, which relief shall be cumulative and in addition to any and all other remedies to which any party may be entitled under this Agreement or by law or equity, including but not limited to an ex parte order for possession of the Required Tooling, finished Goods, materials, and work-in-process.  Seller waives any requirement for posting of a bond, provided that, if a waiver is not permitted by law, the amount of the bond shall not exceed the unpaid purchase price.  CERTAIN JURISDICTIONS PROVIDE THE RIGHT TO A TRIAL BY JURY, BUT THIS RIGHT MAY BE WAIVED.  SELLER HEREBY KNOWINGLY, VOLUNTARILY AND WITHOUT COERCION, WAIVES ALL RIGHTS TO A TRIAL BY JURY OF ALL DISPUTES ARISING OUT OF OR IN RELATION TO A PROCEEDING BY BUYER TO OBTAIN POSSESSION OF REQUIRED TOOLING TO THE FULLEST EXTENT ALLOWED BY LAW.

20. **Compliance with Laws.**

(a) <u>Environmental Laws</u>.  Seller shall comply with all environmental laws, regulations and rules applicable at the place of production and delivery of the Goods and with all standards adopted by Buyer and its Customers relating to the environment, including, for example:  (i) requiring design and materials to maximize the recycling of Goods and end products; (ii) requiring marking of Goods with material composition; (iii) applicable to handling waste and chemicals; (iv) applicable to reacting to environmental emergencies; (v) applicable to use of reusable packaging; and (vi) requiring compliance with emission standards, including for plants and for manufacturing or importing vehicles and engines.  Seller shall obtain and retain third party certificates of compliance with ISO 14001 for all of Seller's facilities that produce Goods or have a significant impact on the environment.

(b) <u>Employment Laws</u>.  Seller shall include any provisions, representations, agreements, or contractual clauses required to be included or incorporated by reference or operation of law in any contracts resulting from acceptance of an Order, including, for contracts to be performed in the United States, those dealing with Equal Employment Opportunity, Employment of Veterans, Employment of the Handicapped, Employment Discrimination Because of Age, Utilization of Disadvantaged Business Enterprises and the related Acts and Executive Orders, or, in Canada, the right to equal treatment with respect to employment without discrimination and freedom from harassment in the workplace as provided in the OHSA and the Human Rights Code (Ontario), and any similar applicable state or provincial legislation, as now or hereafter amended or codified and any similar laws of the jurisdiction of production and destination of the Goods.  Seller shall comply with all applicable requirements as a subcontractor if an Order qualifies Seller as a subcontractor on a government contract.

(c) <u>Non-Segregated Facilities</u>.  For Orders issued in the United States, Seller warrants that it is, and shall continue to be, in compliance with the requirements for non-segregated facilities set forth in 41 CFR Chapter 601.8.  Seller warrants that it is and shall continue to be in compliance with any similar laws of the jurisdiction of production or destination of the Goods and is an equal opportunity employer.

(d) <u>Controlled Substances</u>.  Seller warrants that each chemical substance constituting or contained in the Goods sold is on the list of chemical substances compiled and published by the Administrator of the Environmental Protection Administration pursuant to the Toxic Substances Control Act (15 U.S.C. Sec. 2601 <u>et</u>. <u>seq</u>.) as amended, and any similar laws of the jurisdiction of production or destination of the Goods (including without limitation, the Environmental

Protection Act in Canada) and that the Goods are not hazardous under any national, state/provincial, and/or local law of the jurisdiction of production or destination, except as clearly stated on the shipping and storage containers.

(e)     Composition of Goods.  Seller shall supply to Buyer material safety data sheets on all Goods to each location to which there has not been a prior shipment.  Upon the request of Buyer, Seller shall provide Buyer with access to and copies of any other data, materials or other information, including any formulas or analyses, that:  (i) relate to the Goods, their composition, any component or part of the Goods, or any materials or substances used in the Goods or in connection with their production; and (ii) are needed, as determined by the requestor, to enable compliance with any requirement of a government (either mandated or voluntarily agreed upon by Buyer or any of its affiliates) relating to the hazardous, toxic or other content or nature of the Goods, or the ability to dispose of or recycle the Goods or any component, part or materials in the Goods.  Seller shall comply with Buyer's and Customer's requirements relating to the use (or prohibition on use) of certain materials and substances in the Goods and shall utilize and comply with Buyer's reporting processes and requirements relating to any such data, materials or other information (such as the International Material Data System).

(f)     Labor Standards.  Seller warrants that any Goods produced in the United States shall be produced in compliance with the requirements of the Fair Labor Standards Act of 1938, as amended, including Section 12(a) thereof and Seller shall insert a certificate to that effect on all invoices submitted in connection with an Order.  Seller warrants that the Goods produced outside the United States shall be produced in facilities that comply with local law and any safety, labor or employment, and environmental standards imposed by laws or adopted by Buyer.  Seller and its subcontractors shall comply with all applicable laws relating to labor relations and human rights in the production of Goods and its work places.

(g)     Industry Standards and Law.  Seller warrants that it shall comply with all applicable industry standards and national, state/provincial and/or local laws, rules, regulations and ordinances/bylaws applicable to the Goods and performance of an Order in the jurisdiction of production and final destination of the Goods.

(h)     Export and Economic Sanctions Laws.  This Order and all items furnished by Buyer to Seller in connection herewith shall at all times be subject to any and all applicable export control, economic sanctions and anti-terrorism laws and regulations of Canada and the U.S., Nuclear Safety and Control Act, United Nations Act, Special Economic Measures Act, Criminal Code, and in the case of the United States including, but not limited to, 10 CFR Part 810 and U.S. Export Administration Regulations, Nuclear Technology Regulations, and the embargoes and economic sanctions administered by the Office of Foreign Assets Control.  Seller warrants that no equipment, materials, services, technical data, technology, software or other technical information or assistance furnished by Buyer, or any product thereof, shall be exported or re-exported by Seller or its authorized transferees, if any, directly or indirectly, except to the consignee(s), if any, specified on this Terms, and in accordance with applicable law relating to export control, economic sanctions and anti-terrorism. Further, Seller warrants that no such export or re-export will be made without the prior explicit authorization, in writing, of Buyer and in accordance with any applicable Canadian, U.S. or other relevant export control, economic sanctions and anti-terrorism laws and regulations that the Buyer is subject to.  The obligations in this Section shall survive any satisfaction, expiration, termination or discharge of any other contract obligations.

20

(i)     Seller's Import Obligations.  To the extent Goods are to be delivered under these or other terms requiring Seller to deliver with duty and taxes paid to the destination country (e.g., DDP), Seller warrants that Buyer will not be a legally named party to the importation of the Goods, that the transaction(s) represented by an Order will be consummated after importation, and that Seller will neither cause nor permit Buyer's name to be shown as "importer of record" on any customs declaration.  Seller also warrants that in circumstances where it is delivering the Goods under DDP terms it has resident and/or non-resident importation rights into the destination country with knowledge of the necessary import laws.  If Seller is acting as the importer of record into a country for the delivery of Goods to the Buyer or its designee, including any component parts thereof, associated with an Order, Seller shall provide Buyer required documentation and all necessary information for duty drawback purposes.

(j)     Conflict Minerals Reporting.  Seller warrants that, to its knowledge, no tantalum, tin, tungsten and/or gold ("Conflict Minerals"), contained in any good subject to an Order, originated from the Democratic Republic of the Congo or an adjoining country, unless the Conflict Minerals were processed by a facility listed as compliant pursuant to the CFSI Conflict-Free Smelter Program.  Seller shall comply with the terms and conditions in any Buyer's Conflict Minerals Policy, and to communicate to its sub-suppliers its own commitment to responsible sourcing and legal compliance.  Seller shall cooperate and work with its subcontractors in an attempt to ensure traceability of Conflict Minerals at least to smelter or refiner level, to maintain and record all Conflict Minerals traceability documentation for five years, and to provide such documentation to Buyer upon request.

21.     **Assignment, Subcontracting and Replacement Orders**.  Assignment by Seller of an Order or any interest therein, or any payment due or to become due to Seller, without the prior written consent of Buyer, shall be void and not binding on Buyer.  Subcontracting any part of an Order without the prior written consent of Buyer is prohibited.  Buyer shall not be obligated to any subcontractor for the product or services of any subcontractor whether or not Buyer has consented to or designated a subcontractor.  Buyer may, however, pay the claim of any subcontractor on an Order if in Buyer's reasonable judgment such monies are owed, Seller has failed to make payment, and payment is required for the subcontractor to continue to perform.  Seller shall immediately reimburse Buyer for any such payments.  Approval of a subcontractor is not a release or waiver of any obligation of Seller or right of Buyer.  Subcontracts related to Seller's performance under an Order shall automatically be for the benefit of Buyer without obligating Buyer.  Seller is responsible for all actions or inactions of any subcontractor and shall bind its subcontractors for the benefit of Seller and Buyer to perform its obligations under these Terms.

22.     **Audit and Examination Rights**.  Seller shall maintain general records relating to an Order for a period of not less than four years after completion of final delivery of Goods pursuant to that Order or as otherwise required by applicable law.  Seller shall maintain records of all purchasing, costing, quoting, manufacture, testing and inspection of or related to the Goods and/or an Order during the performance of an Order and for such longer periods as may be specified in an Order, but not less than ten years after the last delivery of the Goods to Buyer or as required by law.  Buyer or its authorized agents and representatives shall have the right at any time during normal business hours of Seller and with one day's prior notice to audit records and to examine facilities, Goods, Required Tooling, materials, and equipment.  If any such audit or examination discloses any inaccurate information, including any overpayment by Buyer to Seller, Seller shall pay Buyer, within 14 days after receipt of notice from Buyer, the amount of any overpayment, with interest at the prime rate then

charged by Buyer's primary bank (expressed as an annual interest rate) plus 4%, plus Buyer's cost incurred in connection with such audit, examination and/or collection activities, including but not limited to actual and reasonable attorney and accounting fees and other costs.  Seller shall obtain from its suppliers and subcontractors the same audit and examination rights for the benefit of Buyer.

23.   **Foreign Purchases**.   The following applies to all transactions involving Goods or portions of Goods to be imported into the country in which Seller's place of final delivery to Buyer is destined:

(a)   Seller as Exporter and Importer.   Except as otherwise provided in an Order, Buyer shall not be a party to the exportation or importation of the Goods.   The transaction(s) represented by an Order will be consummated subsequent to importation into the country of destination, and Seller will neither cause nor permit Buyer's name to be shown as "Importer of Record" on any customs declaration. Seller shall obtain all licenses necessary or convenient for the exportation and importation of the Goods to make delivery to the Buyer.

(b)   Customs Forms.   Upon request and where applicable, Seller shall provide Buyer or Buyer's representative with all applicable Customs forms, properly executed by Seller, as required by Buyer, including but not limited to U.S. Customs Form CF7543 entitled "Certificate of Delivery" (or its replacement), U.S. Customs Form CF7501, Canada Customs forms BSF173 Automotive Report and Release document B239E, NAFTA Certificate of Origin, CI1 Canada Customs Invoice. Upon request, Seller shall furnish promptly all documents required for customs drawback purposes, properly completed in accordance with government regulations applicable thereto.  Unless otherwise stated in an Order, all customs drawback will be credited to Buyer.

(c)   Other Certificates.   Upon request, Seller shall furnish promptly to Buyer completed certificates of local value added and certificates of origin and/or trade preference in accordance with applicable government regulations.

(d)   Duties and Drawback Rights.   The price for Goods includes, and Buyer shall own, all related export and import customs duties and import drawback rights, if any, including rights developed by substitution and rights that may be acquired from Seller's supplier(s) that Seller can transfer to Buyer.  Buyer shall include such provisions in all its subcontracts.

(e)   Customs and Country of Origin.   For customs purposes, Seller shall prepare, complete and expedite any and all required forms and submit them to Buyer or Buyer's representative, within 14 days of Seller's receipt of the forms from the Buyer or its designee.  Seller shall attach to the shipping documents a commercial invoice in duplicate that complies with all export and import regulations.  Seller shall provide a declaration of origin and/or trade preference for the Goods being supplied.  In the event the Goods being supplied are eligible to receive preferential treatment in the import country, Seller shall provide with each shipment a declaration of origin suitable to the items being supplied.  For Goods produced and/or supplied from any point within the NAFTA territory (Canada, Mexico and the United States of America), Seller shall provide, with its invoice, a North American Free Trade Agreement Certificate of Origin on U.S. Customs Form 434 or the corresponding Canadian or Mexican form if it is applicable to the Goods.  Unless otherwise agreed, all customs duty and import drawback will be credited to Buyer.  Seller shall also transfer to Buyer all customs duty and import drawback rights, if any (including rights developed by substitution and rights which may be acquired from Seller's suppliers), related to the Goods and which Seller can transfer to Buyer.  Seller agrees to inform Buyer promptly of any such rights.  Seller shall mark the Goods with their country of

origin unless otherwise instructed in writing by Buyer.  Seller shall inform Buyer immediately in writing of any change of origin of Goods and supply revised declaration of origin and/or trade preference forms showing the change.  Unless otherwise agreed upon, customs clearance shall be the responsibility of the Seller.  Seller has no authority to bind Buyer with respect to liability for duties, fees, penalties or other payments or to make representations to customs authorities on its behalf without prior written approval from Buyer.  Seller shall indemnify Buyer against liability for, and hold Buyer harmless from, any and all customs duties, fees, penalties or other amounts due with respect to the exportation of materials or components furnished by Buyer to the country of assembly and subsequent importation into any jurisdiction of products assembled in whole or in part with Buyer's materials or components.

24.     **Force Majeure**. Neither Buyer nor Seller shall be liable for a delay or failure to perform directly attributable to a force majeure event, provided that the party seeking to claim this protection must give written notice of the occurrence of a force majeure event and of the possible delay or non-performance caused by it as soon as reasonably practicable after learning of it.   A force majeure event is a cause or event that is beyond the reasonable control of a party and that is not attributable to its fault or failure to exercise due care, including, without limitation, acts of God, war, warlike conditions, blockade, embargoes, riots, governmental restriction, labor disturbances (other than those to Seller's own work force that could have been avoided), epidemics, quarantine, fire, flood, earthquake, explosion not caused by a party's negligence, or any other causes beyond the reasonable control of the party providing notice.  Delays or non-performance of a subcontractor or supplier of a party are force majeure events only if and only to the extent that the subcontractor or supplier's delay or non-performance is itself attributable to a force majeure event in the prior sentence.  Notwithstanding the foregoing, force majeure events do not include any failure to comply with applicable law or to take actions that are reasonably necessary to schedule performance in anticipation of any event of which public notice has been given, nor does any change in cost or availability of materials, components or services to Seller based on market conditions, supplier actions, labor disruptions or contract disputes.  Existence and notice of a force majeure event does not limit Buyer's right to terminate for delay or non-performance, but Seller shall not be liable for damages except as specifically provided.   Upon notice, Seller may be required to use alternative means of performance, at Seller's cost.   In the event that Seller's ability to perform is only partially impacted by a force majeure event, such that allocation between Buyer and Seller's other customers is necessary, Seller shall supply Buyer before it supplies any other regular customers who did not have outstanding contracts or orders at the time of the force majeure event and before it supplies its own requirements.  Seller shall resolve any open issues or options regarding allocation in favor of Buyer.   Seller and Buyer shall share information, confer, seek agreement and otherwise act cooperatively to avoid or mitigate the effects of the force majeure event.  Buyer may at its option acquire possession of all finished Goods, work in process and raw materials produced or acquired for the work under an Order, and it also may acquire substitute products from other suppliers for the duration of the force majeure event and for a reasonable time after, and it may reduce accordingly any quantity of Goods ordered from Seller under an outstanding Release.

25.     **Applicable Law, Jurisdiction, Waiver of Liens and Sovereignty.**

(a)     <u>Applicable Law and Jurisdiction</u>.  An Order is to be construed according to the laws of the United States of America and the State of Michigan, including the Uniform Commercial Code and excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law provided that

Buyer may elect to apply the law of its domicile, for Orders issued outside of the United States.  The forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, an Order exclusively in the appropriate federal or state courts in the State of Michigan to the extent the courts accept jurisdiction and otherwise exclusively in the courts of the jurisdiction of the entity that issues the Order or to which the Goods are to be shipped, and Seller specifically waives any and all objections to such jurisdiction and venue.

(b)     <u>Liens</u>.  Seller warrants that no lien shall be filed by Seller or anyone claiming under or through Seller against Buyer, the Goods, the Furnished Property, the site for delivery or installation of the Goods, or Buyer's Customer, for materials, labor, services, equipment or goods furnished as part of the Goods or Furnished Property.  Seller waives any right it may have pertaining to, and agrees not to file or otherwise assert or prosecute or suffer or permit, any mechanic's, storage, materialman's, or other type of liens to be filed or continued against any property of Buyer.  Seller shall insert the prior sentence in any lower tier subcontract or purchase order for labor, equipment or materials furnished.  If any such lien shall be filed by Seller's direct subcontractor, or any of its lower tier subcontractors, Seller shall take any and all steps necessary for the immediate release and discharge of such lien, in the manner required by applicable law, upon demand by Buyer.  Seller shall secure and furnish to Buyer and its Customer, upon request, a waiver of lien from each subcontractor under it.

(c)     <u>Joinder</u>.  If a claim arises under or is related to an Order or the furnishing of Goods by Seller to Buyer, by or against Seller, which is related to a similar claim by or against Seller in another litigation or in an arbitration, Seller irrevocably consents on the request of Buyer to the resolution of such claims arising under or related to an Order by or against Seller in such litigation or arbitration, which shall be binding on the parties and enforceable in a court of record.

(d)     <u>Service of Process</u>.  If Seller does not maintain a registered agent or office in the United States, Buyer hereby irrevocably appoints the Secretary of State or similar official of the jurisdiction whose law applies and CT Corporation as Seller's agent, province, or country of the jurisdiction of whose law applies, Seller shall appoint a service agent domiciled in to receive process in any proceeding arising under or related to an Order and until Seller does so and fails, CT Corporation at its address in New York, New York, shall be the agent for service of process.

(e)     <u>Limitations of Actions</u>.  No claims against Buyer can be brought or maintained unless initiated in the proper forum provided in an Order within one year of the date in which the claim accrued as determined under the Uniform Commercial Code.

26.     **Publicity**.  Without obtaining the prior written consent of Buyer, Seller shall not in any manner advertise or publish the fact that Seller has contracted to furnish Goods to Buyer (or Buyer's Customers), or use any trademark or trade name of Buyer (or Buyer's Customers) in Seller's advertising or promotional materials.  Seller shall not disclose or imply in its marketing that any of Seller's other products are equivalent to the Goods purchased by Buyer.  If Seller breaches this Section, Buyer shall have the right, among its other remedies, to cancel the undelivered portion of any Goods covered by an Order and shall not be required to make further payments except for conforming Goods delivered or services rendered prior to cancellation.

27.     **Ethical Standards**.  Seller shall not: (a) give or offer to give any Gift or Benefit to Buyer's Employees or agents; (b) solicit or accept any information, data, services, equipment or commitment from Buyer's Employees unless it is (i) required under a contract between Buyer and Seller, (ii) made pursuant to a written disclosure agreement between Buyer and Seller, or (iii)

specifically authorized in writing by an officer of Buyer; (c) solicit or accept Favoritism from Buyer's employees; (d) enter into any outside business relationship with Buyer's Employees or suppliers without full disclosure to and prior approval of Buyer's management; or (e) provide to or accept from suppliers any information regarding Buyer or its business. For the purposes of this Section: "Employee" includes members of the employee's immediate family and household, plus any other person who is attempting to benefit from his or her relationship to the employee; "Seller" includes all employees and agents of Seller; "Gift or Benefit" includes money, goods, services, discounts, favors and the like in any form but excluding items with a value of $25.00 or less; "Supplier" includes prospective, current and past suppliers; and "Favoritism" means partiality in promoting the interest of Seller over that of other suppliers. Any breach by Seller of its obligations under this Section shall constitute a material default by Seller of every contract and Order with Buyer and may further result in Seller's debarment from doing business with Buyer.

28. **Payments to Third Party Representatives**. Seller represents and warrants that Seller has not and will not pay any third parties any commissions, fees, or other compensation for acquiring or attempting to acquire an Order without providing Buyer with written notice thereof at the time an Order is solicited and all such payments shall not violate any applicable anti-corruption law, including, but not limited to, the United States Federal Corrupt Practices Act, the United Kingdom Anti-Bribery Act, the Canadian Corruption of Foreign Public Officials Act, and any similar law of any jurisdiction.

29. **Entire Agreement and Modifications**. An Order is intended by the parties as a complete and exclusive statement of the terms of their agreement. It supersedes all prior agreements, written or oral. There are no understandings, inducements, commitments, conditions, representations or warranties of any kind, whether direct, indirect, collateral, express or implied, oral or written, to Seller from or on behalf of Buyer other than as contained in these Terms or otherwise in an Order. No course of prior dealings between the parties and no usage of the trade may be used by Seller to supplement or explain any term used in an Order. All modifications must be in a writing signed by Seller and Buyer, except as otherwise provided in an Order.

30. **Waiver**. The failure of either party at any time to require performance by the other party of any provision of an Order shall in no way affect the right to require such performance at any time thereafter, nor shall the waiver by either party of a breach of any provision of an Order constitute a waiver of any succeeding breach of the same or any other provision. Payment or performance by Buyer shall not constitute a waiver of any breach, right or remedy.

31. **Relationship of Parties**. Seller and Buyer are independent contracting parties and nothing in an Order shall make either party the agent, joint venturer or legal representative of the other for any purpose whatsoever, or grant either party any authority to assume or to create any obligation on behalf of or in the name of the other. Although third parties may be referenced, there are no third party beneficiaries to an Order, except as specifically provided.

32. **Severability**. If any of these Terms or another term in any Order is invalid or unenforceable under any statute, regulation, ordinance/by-law, or any other rule of law, such term shall be reformed or deleted, but only to the extent necessary to comply with such statute, regulation, ordinance/by-law, order or rule, and the remaining provisions of an Order shall remain in full force and effect. Any declaration of unenforceability of a provision hereof shall be as narrow as possible and shall not void an Order or any other provision of the Order, unless Buyer determines it would materially affect its commercial expectations.

(1994137.6)